IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| JAMES E. BOYD )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>MICHAEL ASTRUE, Commissioner )<br>Social Security Administration )<br>) | Civil Action No. WGC-09-790 |

## MEMORANDUM OPINION

Plaintiff James E. Boyd ("Plaintiff" or "Mr. Boyd") brought this action pursuant to 42 U.S.C. § 405(g) for review of a final decision of the Commissioner of Social Security ("Defendant" or "Commissioner") denying his claims for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under Titles II and XVI of the Act, 42 U.S.C. §§ 401-433, 1381-1383c. The parties consented to a referral to a United States Magistrate Judge for all proceedings and final disposition. *See* Document Nos. 7-8.[1] Pending and ready for resolution are Plaintiff's Motion for Summary Judgment, or in the alternative, Motion for Remand (Document No. 18) and Defendant's Motion for Summary Judgment (Document No. 26). No hearing is deemed necessary, s*ee* Local Rule 105.6 (D. Md. 2010), and thus Plaintiff's Motion for Hearing (Document No. 18) is **DENIED**. For the reasons set forth below, Defendant's Motion for Summary Judgment will be granted and Plaintiff's Motion for Summary Judgment will be denied.

---

[1] This case was subsequently reassigned to the undersigned.

1. **Background**.

On April 27, 2004 Mr. Boyd protectively filed applications for DIB[2] and SSI alleging a disability onset date of February 6, 2004 due to back pain. *See* R. at 79-81, 85, 95, 231-33. His applications were denied initially on November 12, 2004. R. at 51-54, 235-38. On December 27, 2004 the Social Security Administration received Mr. Boyd's request for reconsideration. R. at 55-56. On May 4, 2005 the applications were denied again. R. at 57-60, 240-43. Mr. Boyd requested a hearing before an Administrative Law Judge ("ALJ"). R. at 61-63. On March 21, 2006 ALJ J. Robert Brown convened a hearing. R. at 244-62. Mr. Boyd was represented by counsel. ALJ Brown obtained testimony from Mr. Boyd and a vocational expert ("VE"). In the June 14, 2006 decision, ALJ Brown found Mr. Boyd was not disabled within the meaning of the Act. R. at 38, 49A. Mr. Boyd requested a review of the hearing decision. R. at 74-76.

On September 7, 2006 the Appeals Council granted Mr. Boyd's request for review under the substantial evidence and error of law provisions of the Social Security Administration regulations, specifically 20 CFR §§ 404.970, 416.1470. *See* R. at 50. The Appeals Council vacated ALJ Brown's June 14, 2006 decision and remanded the case to the ALJ to resolve the following issue:

> The hearing decision does not contain an adequate evaluation of the examining source opinion in Exhibit 3F. It appears that this examination was done by Dr. Trudy Hall; however, the third page of this examination states that the claimant has not maximized his functional status as physical therapy may improve function. In

---

[2] In the June 14, 2006 decision by Administrative Law Judge ("ALJ") J. Robert Brown, ALJ Brown noted Mr. Boyd "acquired sufficient quarters of coverage to remain insured through September 30, 2008." R. at 32, 44. According to Mr. Boyd's certified earnings record dated January 5, 2006, Mr. Boyd's date last insured ("DLI") is September 2008. R. at 82. In the October 26, 2007 decision by ALJ Frances P. Kuperman, ALJ Kuperman noted Mr. Boyd "acquired sufficient quarters of coverage to remain insured through December 31, 2009." R. at 15. The administrative record contains no document supporting this date.

addition, lifting greater than 10 pounds, bending and stooping will likely aggravate his symptoms. This page of the report is signed by Dr. Helen J. Powell-Stoddart, and decision does not contain a specific evaluation of this assessment.

R. at 50.

The Appeals Council gave the following instructions to the ALJ upon receiving the remand.

> \*     Give further consideration to the examining source opinion pursuant to the provisions of 20 CFR 404.1527 and 416.927 and Social Security Rulings 96-2p and 96-5p, and explain the weight given to such opinion evidence. As appropriate, the Administrative Law Judge may request the examining source to provide additional evidence and/or further clarification of the opinion and medical source statements about what the claimant can still do despite the impairments (20 CFR 404.1512 and 416.912). The Administrative Law Judge may enlist the aid and cooperation of the claimant's representative in developing evidence from the claimant's treating source.
>
> \*     Give further consideration to the claimant's maximum residual functional capacity and provide appropriate rationale with specific references to evidence of record in support of the assessed limitations (20 CFR 404.1545 and 416.945 and Social Security Ruling[s] 85-16 and 96-8p).
>
> \*     If warranted by the expanded record, obtain evidence from a vocational expert to clarify the effect of the assessed limitations on the claimant's occupational base (Social Security Ruling 83-14). The hypothetical questions should reflect the specific capacity/limitations established by the record as a whole. The Administrative Law Judge will ask the vocational expert to identify examples of appropriate jobs and to state the incidence of such jobs in the national economy (20 CFR 404.1566 and 416.966). Further, before relying on the vocational expert evidence the Administrative Law Judge will identify and resolve any conflicts between the occupational evidence provided by the vocational expert and information in the Dictionary of Occupational Titles (DOT) and its companion publication, the Selected Characteristics of Occupations (Social Security Ruling 00-4p).

3

R. at 50-50A.

The Appeals Council further instructed the ALJ to offer Mr. Boyd the opportunity for a hearing. The Appeals Council vacated ALJ Brown's June 14, 2006 decision and remanded the case to the ALJ.

A supplemental hearing was held on March 9, 2007 in accordance with the Appeals Council's Order. Mr. Boyd was again represented by counsel. A different ALJ, Frances Kuperman, presided at the hearing. ALJ Kuperman obtained testimony from Mr. Boyd and a VE, Karen Van Dyk.[3] R. at 263-94. In the October 26, 2007 decision, ALJ Kuperman found Mr. Boyd was not disabled within the meaning of the Act. R. at 23. On December 31, 2007 the Social Security Administration received Mr. Boyd's request for review of hearing decision/order. R. at 10-11. On January 29, 2009 the Appeals Council, finding no reason under the rules to review the ALJ's decision, denied Mr. Boyd's request for review, R. at 7-9, thus making ALJ Kuperman's determination the Commissioner's final decision.

2. **ALJ's Decision**.

ALJ Brown evaluated Mr. Boyd's claims for DIB and SSI using the sequential evaluation process set forth in 20 C.F.R. §§ 404.1520, 416.920. Mr. Boyd bears the burden of demonstrating his disability as to the first four steps. At step five the burden shifts to the Commissioner. If Mr. Boyd's claims fail at any step of the process, the ALJ does not advance to the subsequent steps. *Pass v. Chater*, 65 F.3d 1200, 1203 (4th Cir. 1995). At step one ALJ Brown found Mr. Boyd has not engaged in substantial gainful activity at any time relevant to the decision. R. at 34, 46. ALJ Brown concluded at step two that Mr. Boyd's degenerative disc

---

3  Ruth B. Rondberg was the vocational expert at the March 21, 2006 hearing.

disease and substance abuse are severe impairments. *Id.*

At step three ALJ Brown determined Mr. Boyd does not have an impairment or combination of impairments that meets or medically equals the criteria of any of the listed impairments described in 20 C.F.R. Part 404, Subpart P, Appendix 1. ALJ Brown specifically considered Listing 1.04, *disorders of the spine*. ALJ Brown noted Mr. Boyd's degenerative disc disease could satisfy the threshold requirement of Listing 1.04 because the MRI showed encroachment on, although not comprise of, the left L3 nerve root. R. at 35, 47. However, ALJ Brown found Mr. Boyd fails to meet additional criteria of Listing 1.04. ALJ Brown did not discuss Mr. Boyd's substance abuse at step three.

Next, ALJ Brown determined Mr. Boyd's residual functional capacity ("RFC"). ALJ Brown found Mr. Boyd can perform the exertional demands of light level work. Mr. Boyd however has certain non-exertional, specifically postural, limitations. "He is restricted from more than occasional climbing of ladders, ropes or scaffolds, or more than occasional stooping, crouching or crawling." R. at 35, 47.

At the fourth step ALJ Brown found Mr. Boyd's RFC precluded him from performing his past relevant work as an auto repair technician, a tire technician, a medical assistant and a GI[4] technician. Finally, at step five, ALJ Brown considered Mr. Boyd's age (50 years old; "closely approaching advanced age"), education (GED), past work experience (mixture of skilled and semi-skilled) and his RFC. ALJ Brown found the Social Security Administration met its burden of proving that Mr. Boyd is capable of performing various other jobs that exist in significant numbers in the national economy, relying on the testimony of the VE. R. at 38, 49A.

---

4 Gastrointestinal.

Accordingly, ALJ Brown concluded that Mr. Boyd is not disabled within the meaning of the Act. *Id.*

After the supplemental hearing ALJ Kuperman reevaluated Mr. Boyd's claims. At step one ALJ Kuperman found Mr. Boyd had not engaged in substantial gainful activity since February 6, 2004, the alleged onset date. R. at 17. "The claimant earned $2,936.00 in 2005 and $2[,]082.33 in 2006. These earnings were not indicative of substantial gainful work." *Id.* At step two ALJ Kuperman found Mr. Boyd has a severe combination of impairments, specifically degenerative disc disease and a history of substance abuse. With regard to the latter severe impairment ALJ Kuperman noted Mr. Boyd "received in-patient treatment through the Department of Veterans Affairs (VA) in 1995. He abstained for approximately five years and then began drinking again. Treatment records for April 2004 and January 2006 note current use of alcohol." R. at 18.

At step three ALJ Kuperman determined Mr. Boyd does not have an impairment or combination of impairments that meets or medically equals a listing. Specifically, Mr. Boyd does not meet the requirements for any musculoskeletal system or mental disorders listings. "There is no objective medical evidence of nerve root compression, spinal arachnoiditis,[5] or lumbar spinal stenosis[6] as described in Listing 1.04. . . Substance abuse is evaluated under separate listings that are not applicable in this case." *Id.*

Next ALJ Kuperman determined Mr. Boyd's RFC. She found Mr. Boyd has the RFC to

---

[5] "[D]escribes a pain disorder caused by the inflammation of the arachnoid, one of the membranes that surround and protect the nerves of the spinal cord." *National Institute of Health, National Institute of Neurological Disorders and Stroke*, http://www.ninds.nih.gov/disorders/arachnoiditis/arachnoiditis.htm (last visited Oct. 4, 2010).

[6] "Spinal stenosis is a narrowing of one or more areas in [one's] spine — most often in [one's] neck or lower back. This narrowing can put pressure on the spinal cord or spinal nerves at the level of compression." *Mayo Clinic*, http://www.mayoclinic.com/health/spinal-stenosis/DS00515 (last visited Oct. 4, 2010).

perform light work, meaning he can lift and carry 10 pounds frequently, 20 pounds occasionally. Mr. Boyd is able to sit, stand or walk for 6 hours of an 8 hour work day. He can push or pull. ALJ Kuperman however found Mr. Boyd has postural limitations. "He is restricted from more than occasional climbing of ladders, ropes, or scaffolding, or more than occasional stooping, crouching, or crawling." *Id.*

At step four ALJ Kuperman assessed whether Mr. Boyd has the RFC to perform his past relevant work. ALJ Kuperman excluded from consideration Mr. Boyd's jobs at Jiffy Lube, Solo Cup and as a printer because those positions constituted failed work attempts. R. at 22. Mr. Boyd's past relevant work includes jobs as a medical assistant (light, skilled work), a tire technician (heavy, semi-skilled work) and a maintenance porter (heavy, unskilled work). Mr. Boyd is unable to perform his past relevant work as a tire technician or a maintenance porter due to exertional limitations. "Because pain and alcohol use may interfere with the claimant's ability to perform complex, skilled tasks, he is also unable to perform his past work as a medical assistant." *Id.* ALJ Kuperman thus moved to step five of the sequential evaluation process.

At step five ALJ Kuperman considered Mr. Boyd's age on the alleged disability onset date (50 years old; individual closely approaching advanced age), his education (high school education), his past relevant work and his RFC (unskilled, light occupational base). Relying on testimony from a VE, ALJ Kuperman found jobs[7] exist in significant numbers in the national economy that Mr. Boyd can perform. Accordingly, ALJ Kuperman concluded Mr. Boyd is not disabled within the meaning of the Act. R. at 23.

---

7 Office cleaner, general office clerk and lobby attendant. R. at 23. "Pursuant to SSR 00-4p, the vocational expert's testimony is consistent with the information contained in the Dictionary of Occupational Titles." *Id.*

3. **Standard of Review**.

The role of this Court on review is to determine whether substantial evidence supports the Commissioner's decision and whether the Commissioner applied the correct legal standards. 42 U.S.C. § 405(g); *Pass v. Chater*, 65 F.3d at 1202; *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). It is more than a scintilla, but less than a preponderance, of the evidence presented, *Shively v. Heckler*, 739 F.2d 987, 989 (4th Cir. 1984) (citations omitted), and it must be sufficient to justify a refusal to direct a verdict if the case were before a jury. *Hays*, 907 F.2d at 1456. This Court cannot try the case *de novo* or resolve evidentiary conflicts, but rather must affirm a decision supported by substantial evidence. *Id*.

4. **Discussion**.

*Weight Accorded to Opinion of Non-Examining Physician*

Plaintiff argues "[b]oth ALJs found that Dr. Niv, a non-examining state agency physician[,] was entitled to controlling weight over the medical opinions of Drs. Hall and Powell-St[o]ddart who limited Boyd to sedentary work." Mem. P. & A. Supp. Mot. Summ. J. at 5. The Court notes the Appeals Council *vacated* the June 14, 2006 decision by ALJ Brown. *Only* the October 26, 2007 decision by ALJ Kuperman constitutes the final decision of the Commissioner. The Court therefore will not consider any arguments regarding the *vacated* June 14, 2006 decision.

ALJ Kuperman stated the following concerning Dr. Niv.

> Avigor I. Niv, M.D., reviewed the evidence on April 25, 2005 and opined that the claimant was able to lift and/or carry 20 pounds occasionally and 10 pounds frequently; stand and/or walk about 6 hours in an 8-hour workday; sit about 6 hours in an 8-hour workday; occasionally climb ladders, ropes or scaffolds, stoop, crouch, or crawl; and frequently climb ramps and stairs, balance, and kneel. Dr. Niv also opined that the claimant should avoid concentrated exposure to hazards and moderate exposure to vibration. (Exhibit 5F) Dr. Niv also provided a well-reasoned explanation in support of that opinion. (Exhibit 4F) Because Dr. Niv's opinion is consistent with and based on objective medical evidence, it was accorded great weight.

R. at 20.

Regarding Dr. Hall and Dr. Powell-Stoddart, ALJ Kuperman made the following findings.

> Trudy Hall, M.D., was the claimant's attending physician at Bon Secours Baltimore Health System on March 28, 2005. Dr. Hall recorded an impression of low back pain secondary to discogenic[8] pathology involving L2, L3, and L4 discs with MRI confirmation and facet arthropathy. There was no Waddell sign present. (Exhibit 3F) Significantly, the claimant's straight leg raise tests were negative bilaterally as was the Patrick test. He had normal strength in the upper and lower extremities, but had reduced range of motion due to pain. The third page of the report is in different type and signed by Helen J. Powell-Stoddart, M.D. Dr. Powell-Stoddart stated, "It appears the claimant has not maximized his functional status. Physical therapy may improve function with strengthening exercises and neuromuscular balancing of his abdominal and lumbar musculature his pain may be better controlled with NSAID alternating with Tylenol. Lifting greater than 10 lbs, bending and stooping will likely aggravate his symptoms."
>
> Dr. Powell-Stoddart did not explain the basis of her opinion, nor did she describe the symptoms that would likely be aggravated. The undersigned believes that Dr. Powell-Stoddart was referring to

---

8 "[C]aused by derangement of an intervertebral disk." *Dorland's Illustrated Medical Dictionary* 480 (27th ed. 1988).

> pain in regard to symptoms. There is, however, no objective medical evidence from Dr. Hall's examination to support the limitation for lifting. The September 2, 2004 MRI of the lumbar spine found left lateral and far lateral disc extrusion of L3-4 resulting in left neural foraminal stenosis and encroachment upon the post-foraminal portion of the exiting left L3 nerve root. (Exhibit 6F) Dr. Hall reported symptoms of weakness into the claimant's right leg and low back pain. As explained by Dr. Niv, the MRI points to disc disease and nerve root compression on the left, not the right. (Exhibit 4F) Because Dr. Powell-Stoddart's opinion is not supported by objective medical evidence and is inconsistent with objective findings by Dr. Hall, it was accorded little weight. Furthermore, based on the entries on Exhibit 3F, the examining physician was Dr. Hall, not Dr. Powell-Stoddart. Therefore, Dr. Powell-Stoddart's opinion is entitled to no deference as she was neither a treating nor examining physician.

R. at 21.

Contrary to Plaintiff's assertion, ALJ Kuperman did not give *controlling weight* to the opinion of Dr. Niv. Avigor I. Niv. M.D. is an Orthopaedic Consultant working on behalf of the Social Security Administration. *See* R. at 167, 175. Dr. Niv neither examined nor treated Mr. Boyd. ALJ Kuperman could not have given *controlling weight* to Dr. Niv's opinion. *Social Security Ruling* ("SSR") 96-2p[9] explicitly states *controlling weight* is "the term used in 20 CFR 404.1527(d)(2) and 416.927(d)(2) to describe the weight we give to a medical opinion from a *treating source* that must be adopted." SSR 96-2p, 1996 WL 374188, at *2 (Jul 2, 1996) (emphasis added).

ALJ Kuperman did not accord controlling weight to either Dr. Hall or Dr. Powell-Stoddart. According to the Social Security Regulation

> Unless the treating source's opinion is given controlling weight, the administrative law judge must explain in the decision the weight given to the opinions of a State agency medical or

---

9 *Policy Interpretation Ruling Titles II and XVI: Giving Controlling Weight to Treating Source Medical Opinions.*

> psychological consultant or other program physician or psychologist, as the administrative law judge must do for any opinions from treating sources, nontreating sources, and other nonexamining sources who do not work for us.

20 C.F.R. §§ 404.1527(f)(2)(ii), 416.927(f)(2)(ii) (2008).

ALJ Kuperman explained with particularity why Dr. Powell-Stoddart's opinion was entitled to little deference since Dr. Powell-Stoddart's opinion is not supported by objective medical evidence and further is inconsistent with Dr. Hall's objective findings. The Court finds this determination is supported by substantial evidence.

With regard to Dr. Hall, an attending physician of Mr. Boyd, she physically examined Mr. Boyd on March 28, 2005. Dr. Hall found Mr. Boyd had low back pain secondary to "discogenic pathology" involving L2, L3 and L4 discs. An MRI from September 2004 found "[l]eft lateral and far lateral disc extrusion of L3-4 resulting in left neural foraminal stenosis and encroachment upon the post-foraminal portion of the exiting left L3 nerve root." R. at 181. During the examination Mr. Boyd reported pain symptoms on the right side. R. at 164. "[W]hen I asked him to squat, he had difficulty with tightness and pain and weakness in his right side[.]" *Id.* Dr. Hall also found "rotation to the left and to the right did cause some symptomatology in the region of L2-L3 area in a discogenic pattern." *Id.* Dr. Hall's assessment includes an impression of "low back pain secondary to discogenic pathology involving L2, L3 and L4 with MRI confirmation. His symptoms are consistent with this pathology." *Id.* Dr. Hall did not opine whether Mr. Boyd had any functional limitations.

Dr. Niv disagreed with part of Dr. Hall's assessment. "The MRI of September 2004 is significantly pathologic, but contrary to [Dr. Hall's] opinion, it is NOT concordant with the claimant's symptoms: most of the pain alleged is on the [right], while the MRI findings point to

disc disease and nerve root compression on the [left]." R. at 167.

Since Dr. Hall, Dr. Powell-Stoddart and Dr. Niv were not treating physicians, ALJ Kuperman relied on the factors of supportability and consistency in weighing these doctors' opinions.[10] ALJ Kuperman found Dr. Powell-Stoddart's opinion both unsupportable and inconsistent with the record as a whole. Dr. Hall's opinion was primarily supported by medical signs resulting from the physical examination she conducted but her finding regarding "right side" pain was inconsistent with the MRI indicating Mr. Boyd's impairment was on the left side. Dr. Niv, after a review of Mr. Boyd's medical records, opined:

> The MER[11] has longitudinal documentation of the alleged low back pain. The MRI of September 2004 is significantly pathologic, but contrary to the CE[12] opinion, it is NOT concordant with the claimant's symptoms: most of the pain alleged is on the Rt., while the MRI findings point to disc disease and nerve root compression on the Lt. Never the less, the MDI[13] is considered severe and RFC is compiled.
>
> Assessing the credibility, one must consider the fact that the claimant is under care for chronic alcohol abuse: on his own admission, drinking at times up to ½ gallon of wine a day.[14] That

---

10 ALJ Kuperman did not address the factor of specialization. 20 C.F.R. §§ 404.1527(d)(5), 416.927(d)(5). Dr. Niv has a specialty in orthopedics. There is no evidence in the record with regard to any specialty of Dr. Hall or Dr. Powell-Stoddart.

11 Medical evidence of record.

12 Consultative Examiner.

13 Medically determinable impairment. *See* Mem. Supp. Def.'s Mot. Summ. J. at 14.

14 During the March 9, 2007 hearing ALJ Kuperman asked Mr. Boyd about his weekly alcohol consumption. Mr. Boyd answered that he does not drink because he does not have an income. ALJ Kuperman then asked Mr. Boyd what did he used to drink. He replied, vodka. ALJ Kuperman asked Mr. Boyd, when was the last time you had vodka? Mr. Boyd answered seven years ago. R. at 286.

During a medical appointment in April 2004, Mr. Boyd admitted consuming one pint of vodka the previous day. R. at 224. During a medical appointment on November 15, 2006 Mr. Boyd disclosed he consumes one pint of vodka per week with some beer. R. at 217. During that same session the examiner, a nurse practitioner, expressed concern about Mr. Boyd's alcohol abuse, and discussed getting help for Mr. Boyd. Mr. Boyd responded that he would quit on his own. R. at 218.

>would probably cloud some of his judgment as to the accuracy of his low back pain allegations. The CE consultant felt that the claimant has not maximized his functional status.

R. at 167.

Based on the supportability of Dr. Niv's opinion and the consistency of his opinion with the record as a whole, ALJ Kuperman accorded great weight to Dr. Niv's opinion. The Court finds ALJ Kuperman properly weighed the various medical opinions.

5. **Conclusion**.

Substantial evidence supports the decision that Mr. Boyd is not disabled. Accordingly, the Defendant's Motion for Summary Judgment will be granted and Plaintiff's Motion for Summary Judgment, or in the alternative, Motion for Remand, will be denied.

Date: <u>October 6, 2010</u>  _____/s/_____
WILLIAM CONNELLY
UNITED STATES MAGISTRATE JUDGE